IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| TONITA BROOKS | : | CIVIL ACTION |
| | : | |
| v. | : | |
| | : | |
| CHESTER VALLEY GOLF CLUB, ET AL. | : | NO. 25-761 |

**MEMORANDUM**

**Padova, J.**                                                                                                              November 17, 2025

Plaintiff Tonita Brooks brings this race and sex discrimination action against her former employer, Chester Valley Golf Club (the "Club"), and the Club's general manager, Jordan Pozniak. She asserts claims pursuant to Title VII of the Civil Rights Act of 1964 ("Title VII"), 47 U.S.C. § 2000e et seq., and 42 U.S.C. § 1981. Defendants have moved to dismiss the First Amended Complaint in its entirety pursuant to Federal Rule of Civil Procedure 12(b)(6). For the reasons that follow, we grant the Motion, but also afford Plaintiff leave to amend her claims.

**I.    BACKGROUND**

The First Amended Complaint alleges the following facts. The Club is an event venue and golf club in Malvern, Pennsylvania. (1st Am. Compl. ¶ 5.) It is open to the public for a variety of events, including golf outings and weddings. (Id. ¶ 6.) On May 25, 2021, the Club hired Plaintiff as an accounting support assistant. (Id. ¶ 17.) Within two weeks, Plaintiff learned that the Controller and Assistant Controller were leaving their positions with the Club. (Id. ¶ 18.) As a result, Plaintiff was promoted to Assistant Controller. (Id. ¶ 19.) In that role, Plaintiff was the "only black American woman" in management at the Club. (Id. ¶ 40.) Plaintiff's supervisor was Controller Kathleen McGarry. (Id. ¶ 20.)

In February of 2023, Defendant Jordan Pozniak was hired to be the Club's new General Manager. (Id. ¶ 21.) On February 25, 2023, Pozniak ordered that Plaintiff's job title on the Club's website directory be changed from Assistant Controller to Bookkeeper. (Id. ¶ 23.) He then began giving Plaintiff additional job duties without increasing her pay. (Id. ¶¶ 25-26.) As one example, in May of 2023, Pozniak tasked Plaintiff with training the Membership and Marketing Director about accounts receivable. (Id. ¶ 27.)

At some point prior to mid-November of 2023, Plaintiff and McGarry questioned the Club's Food and Beverage Manager, Ashley Heath, about a $35,000 expenditure that Heath had not included in the October billing. (Id. ¶¶ 28-29.) On November 17, 2023, Pozniak called Plaintiff and McGarry into his office and berated Plaintiff for questioning that expenditure, telling Plaintiff that he had approved it. (Id. ¶ 28, 30.) Heath, however, "was constantly making mistakes in billing [the Club's] guests." (Id. ¶ 34.) Consequently, "Plaintiff was on a near daily basis comping or crediting guest checks because of [Heath's and her department's] errors." (Id. ¶ 34.) "Plaintiff was always cordial, responsive, and professional in her email correspondence with . . . Heath." (Id. ¶ 35.) Heath, in contrast, "would frequently withhold information necessary for Plaintiff to complete her job duties." (Id. ¶ 36.)

At some point in time, Heath complained to Pozniak about Plaintiff. (Id. ¶ 33.) On February 11, 2024, Pozniak sent an email to the accounting department, stating that Plaintiff had been "rude and disrespectful" when working with other Club departments and that it was therefore necessary to outline behavior changes for both Plaintiff and McGarry. (Id. ¶¶ 31-32.)

Shortly thereafter, on February 22, 2024, Plaintiff's immediate supervisor gave Plaintiff an excellent performance evaluation. (Id. ¶ 37.) Nevertheless, at Pozniak's direction, Plaintiff was given only a $1,000.00 pay raise, which amounted to a cost-of-living increase of less than 1%. (Id.

¶ 38.)  At the same time, "all other salaried staff . . . received an average increase of 3% or more for similar performance evaluations."  (Id. ¶ 39.)  Ultimately, Pozniak's "negative comments" and "hostile actions" towards Plaintiff were so "intense," "humiliat[ing]," and "intolerable" that "Plaintiff was forced into a constructive discharge in May 2024."  (Id. ¶¶ 44, 46, 48, 50.)

The Amended Complaint initially contained nine Counts, but Plaintiff withdrew five of the Counts in response to Defendants' Motion to Dismiss.[1]  The four remaining Counts are Counts I, II, IV, and V.  Count I asserts a claim against both Defendants for racial discrimination pursuant to 42 U.S.C. § 1981.  Count II asserts a § 1981 claim against both Defendants for hostile work environment based on race.  Count IV asserts a Title VII claim against the Club for disparate treatment based on sex and race.  Count V asserts a Title VII claim against the Club for hostile work environment based on sex and race.  Defendants have moved to dismiss all four Counts.

## II.  LEGAL STANDARD

When deciding a motion to dismiss pursuant to Rule 12(b)(6), we "consider only the complaint, exhibits attached to the complaint, [and] matters of public record, as well as undisputedly authentic documents if the complainant's claims are based upon these documents." Alpizar-Fallas v. Favero, 908 F.3d 910, 914 (3d Cir. 2018) (quoting Mayer v. Belichick, 605 F.3d 223, 230 (3d Cir. 2010)).  We "accept as true all plausible factual allegations made in the complaint and draw all reasonable inferences in the plaintiff's favor."  In re Asbestos Prod. Liab. Litig. (No. VI), 822 F.3d 125, 133 (3d Cir. 2016) (citing Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007); Williams v. BASF Catalysts LLC, 765 F.3d 306, 323 (3d Cir. 2014)).  However, we "need

---

[1] Specifically, Plaintiff withdrew Count III (retaliation under § 1981), Count VI (retaliation under Title VII), Count VII (intentional infliction of emotional distress), Count VIII (declaratory relief), and Count IX (injunctive relief).  (Pl.'s Mem. in Opposition to Mot. to Dismiss (Pl.'s Mem.") at 2.)

not 'accept as true a legal conclusion couched as a factual allegation.'" Host Int'l, Inc. v. Marketplace PHL, LLC, 32 F.4th 242, 248 (3d Cir. 2022) (quoting Papasan v. Allain, 478 U.S. 265, 286 (1986)) (citation omitted).

A plaintiff's pleading obligation is to set forth "a short and plain statement of the claim," which "give[s] the defendant fair notice of what the . . . claim is and the grounds upon which it rests." Twombly, 550 U.S. at 555 (second alteration in original) (first quoting Fed. R. Civ. P. 8(a)(2); then quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)). The complaint must allege "'sufficient factual matter to show that the claim is facially plausible,' thus enabling 'the court to draw the reasonable inference that the defendant is liable for [the] misconduct alleged.'" Warren Gen. Hosp. v. Amgen Inc., 643 F.3d 77, 84 (3d Cir. 2011) (quoting Fowler v. UPMC Shadyside, 578 F.3d 203, 210 (3d Cir. 2009)). "The plausibility standard is not akin to a 'probability requirement,' but it asks for more than a sheer possibility that a defendant has acted unlawfully." Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556). In the end, we will grant a motion to dismiss pursuant to Rule 12(b)(6) if the factual allegations in the complaint are not sufficient "to raise a right to relief above the speculative level." Geness v. Admin. Off. of Pa. Cts., 974 F.3d 263, 269 (3d Cir. 2020) (quoting Twombly, 550 U.S. at 555).

III.   DISCUSSION

    A.   **Counts I and IV – Race and Sex Discrimination**

Counts I and IV of the Amended Complaint assert claims for disparate treatment race discrimination in violation of § 1981 and Title VII, as well as disparate treatment sex discrimination under Title VII.[2] We largely analyze discrimination "[c]laims brought under Title

---

[2] Section 1981 provides, in pertinent part, as follows:

4

VII [and] § 1981 . . . coextensively," Anderson v. Boeing Co., 694 F. App'x 84, 86 n.4 (3d Cir. 2017) (citations omitted), because the substantive elements of the two claims are "generally identical," Brown v. J. Kaz, Inc., 581 F.3d 175, 181-82 (3d Cir. 2009). To allege a cognizable claim of disparate treatment discrimination under Title VII, a plaintiff must allege that "1) s/he is a member of a protected class, 2) s/he was qualified for the position s/he sought to attain or retain, 3) s/he suffered an adverse employment action, and 4) the action occurred under circumstances that could give rise to an inference of intentional discrimination." Mandel v. M & Q Packaging Corp., 706 F.3d 157, 169 (3d Cir. 2013) (quoting Makky v. Chertoff, 541 F.3d 205, 214 (3d Cir. 2008)). Similarly, to allege a cognizable claim of race discrimination under § 1981, a plaintiff must allege (1) that she is a member of a racial minority, (2) intentional discrimination on the basis of race, and (3) discrimination concerning at least one of the activities in the statute, "which includes the right to make and enforce contracts." Brown v. Philip Morris Inc., 250 F.3d 789, 797 (3d Cir. 2001) (quotation omitted).

The intent elements of the two claims, which are our focus here, are similarly articulated but require different levels of proof. While the intent element of a Title VII claim can be satisfied

---

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind and to no other.

42 U.S.C. § 1981(a). "Although § 1981 does not itself use the word 'race,' the [Supreme] Court has construed the section to forbid all 'racial' discrimination in the making [and enforcement] of . . . contracts." St. Francis Coll. v. Al-Khazraji, 481 U.S. 604, 609 (1987) (citing Runyon v. McCrary, 427 U.S. 160, 168 (1976)); Brown v. Philip Morris Inc., 250 F.3d 789, 796 (3d Cir. 2001) ("Section 1981 . . . prohibits racial discrimination in the making and enforcement of contracts . . . ."). Section 1981 applies to employment contracts. See Brown v. J. Kaz, Inc., 581 F.3d 175, 181 (3d Cir. 2009) (citation omitted).

5

with plausible allegations that racial or sexual animus was a motivating factor for the discriminatory conduct, see 42 U.S.C. § 2000e-2(m), a plaintiff asserting a § 1981 claim must plausibly allege that "but for [her] race, [s]he would not have been discriminated against," Williams v. Tech Mahindra (Americas) Inc., 70 F.4th 646, 651 (3d Cir. 2023) (citing Comcast Corp. v. Nat'l Ass'n of Afr. Am.-Owned Media, 589 U.S. 327, 341 (2020)).  Ultimately, the requirement to plead the requisite intent for either claim may be satisfied with allegations of "enough facts to 'raise a reasonable expectation that discovery will reveal evidence of [that] necessary element.'"  Martinez v. UPMC Susquehanna, 986 F.3d 261, 266 (3d Cir. 2021) (quoting Fowler, 578 F.3d at 213).

Defendants argue that the First Amended Complaint fails to state a claim for race or sex discrimination pursuant to Title VII or § 1981 because it does not a plausibly allege that racial or sexual animus was a motivating factor behind, much less the but-for cause of, any alleged adverse employment action.  The Amended Complaint appears to allege that Plaintiff was subjected to adverse employment actions based on race and sex in violation of § 1981 and Title VII insofar as (1) her title was changed from assistant controller to bookkeeper on the Club's directory; (2) she was given an increased workload with no increase in compensation; and (3) she was awarded only a $1,000 raise in spite of an excellent performance evaluation.  (1st Am. Compl. ¶¶ 23, 25-27, 38; see Pl.'s Mem at 5-6.)

In arguing that the Amended Complaint adequately alleges that discrimination was the but-for cause of, and a motivating factor for, these actions, Plaintiff argues only that the Amended Complaint plausibly alleges sufficient comparator evidence, i.e., evidence that individuals similarly situated to a plaintiff, but not of her protected race and sex, were treated more favorably under similar circumstances.  (See Pl.'s Mem. at 6-7 (arguing that "no other individuals similarly

situated but not of Plaintiff's protected class of race [and sex] were treated similarly to the way Plaintiff was treated")); Golod v. Bank of Am. Corp., 403 F. App'x 699, 702 n.2 (3d Cir. 2010) (stating that an inference of causation can be supported with allegations of comparator evidence (citing Swierkiewicz v. Sorema N.A., 534 U.S. 506, 511-12 (2002)); Greene v. Virgin Islands Water & Power Auth., 557 F. App'x 189, 195 (3d Cir. 2014) (explaining what is meant by "comparator evidence" (citing Sarullo v. U.S. Postal Serv., 352 F.3d 789, 797 n.7 (3d Cir. 2003))). There are, however, only two allegations in the Amended Complaint that appear to concern the differential treatment of other potentially similarly-situated employees with respect to salary, workload, and/or title. Specifically, Paragraph 39 alleges that "all other salaried staff had received an average increase of 3% or more for similar performance evaluations," and Paragraph 40 alleges that Plaintiff "was the only black American woman employed in management at the [C]lub during the time of these occurrences and the only one treated in such a discriminatory manner." (1st Am. Compl. ¶¶ 39-40.)

Neither of these allegations support a reasonable inference that the alleged adverse employment actions (title change, increased workload, and minimal salary increase) were motivated by racial or sexual animus. Indeed, Paragraph 39's failure to allege the race and sex of the "other salaried staff" to whom it refers makes it impossible to draw a reasonable inference that there were non-black and male salaried staff who were treated more favorably than Plaintiff. Moreover, because an "average" is necessarily the product of amounts both higher and lower than the average, the allegation that the staff "received an average increase of 3% or more for similar performance evaluations" does not even allow for a reasonable inference that all staff with similar performance evaluations received larger raises than Plaintiff's, such that they were treated more favorably. (Id. ¶ 39.) Meanwhile, Paragraph 40's allegation that Plaintiff "was the only black

American woman . . . in management" and was the only one "treated in such a discriminatory manner" is simply too vague and general to allow for a reasonable inference that white men in management did not have their titles changed, have their workloads increased without a corresponding pay raise, or get small salary increases in spite of good performance reviews. There are also no allegations that permit us to infer that any white men in management were similarly situated to Plaintiff in any respect other than being members of management. See Houston v. Easton Area Sch. Dist., 355 F. App'x 651, 654 (3d Cir. 2009) ("To make a comparison of the plaintiff's treatment to that of an employee outside the plaintiff's protected class . . . , the plaintiff must show that [s]he and the employee are similarly situated in all *relevant* respects." (citation omitted)); id. (explaining that "in the context of personnel actions," the relevant factors to consider in determining whether the comparator is similarly situated are commonly whether "the two employees dealt with the same supervisor, were subject to the same standards, and had engaged in similar conduct without such differentiating or mitigating circumstances as would distinguish their conduct or the employer's treatment of them" (quotation omitted)).

For these reasons, even reading the allegations of the Amended Complaint in a light most favorable to Plaintiff, we conclude that the Amended Complaint does not plausibly allege that racial or sexual animus was a motivating factor behind, much less the but-for cause of, the alleged adverse employment actions on which Plaintiff's disparate treatment claims rests. See Gross v. R.T. Reynolds, Inc., 487 F. App'x 711, 716 (3d Cir. 2012) (finding that a complaint failed to allege a plausible claim of race discrimination under § 1981 where it alleged "an abundance of wrongdoing" but no "facts supporting the conclusion that those acts were motivated by discrimination the basis of race"); Bailey v. Millenium Grp. of Del., No. 21-1752, 2022 WL 3754617, at *2 (3d Cir. 2022) (affirming dismissal of Title VII claim where plaintiff "offered

8

nothing more than his own speculation that [the alleged adverse action] was motivated by racial discrimination and pleaded no facts to support any inference that it was" (citations omitted)). It simply contains too few factual allegations to "raise a reasonable expectation that discovery will reveal evidence of [that] necessary element." Martinez, 986 F.3d at 266 (quoting Fowler, 578 F.3d at 213).

Accordingly, we dismiss the race and sex discrimination claims in Counts I and IV of the Amended Complaint for failure to state a claim upon which relief can be granted.

**B. Counts II and V – Hostile Work Environment**

Count II of the Amended Complaint asserts a hostile work environment claim based on race against Defendants pursuant to § 1981, and Count V asserts a hostile work environment claim based on both race and gender against the Club pursuant to Title VII. Hostile work environment claims under the § 1981 and Title VII are "analyzed in the same manner." Miller v. Thomas Jefferson Univ. Hosp., 908 F. Supp. 2d 639, 653 (E.D. Pa. 2012), aff'd, 565 F. App'x 88 (3d Cir. 2014). In order to plead such a claim, a plaintiff must allege that "1) [she] suffered intentional discrimination because of . . . her [protected status], 2) the discrimination was severe or pervasive, 3) the discrimination detrimentally affected the plaintiff, 4) the discrimination would detrimentally affect a reasonable person in like circumstances, and 5) the existence of *respondeat superior* liability [where the employer is alleged to be responsible]." Castleberry v STI Grp., 863 F.3d 259, 263 (3d Cir. 2017) (quoting Mandel, 706 F.3d at 167). Defendants argue that the Amended Complaint fails to sufficiently allege that there was race and/or sex discrimination that meets the severe or pervasive requirement.

The Supreme Court has explained that the "'severe or pervasive'" standard "is an objective standard, based on 'an environment that a reasonable person would find hostile or abusive.'"

Tourtollette v. Eli Lilly & Co., 636 F. App'x 831, 846 (3d Cir 2016) (quoting Harris v. Forklift Sys., 510 U.S. 17, 21 (1993)).  Because "severe or pervasive" is in the disjunctive, the standard can be satisfied with allegations of harassment that was either severe or pervasive.  Castleberry, 863 F.3d at 264.  Thus, "some harassment may be severe enough to contaminate an environment even if not pervasive," whereas "other, less objectionable, conduct will contaminate the workplace only if it is pervasive."  Id. (quoting Jensen v. Potter, 435 F.3d 444, 449 n.3 (3d Cir. 2006)).  "Isolated incidents and offhanded comments . . . are [ordinarily] not sufficient to sustain a hostile work environment claim," Stucke v. City of Phila., 685 F. App'x 150, 153 (3d Cir. 2017) (first alteration in original) (quotation omitted), although an extremely serious incident, such as a racial epithet accompanied by a threat of termination, can suffice, Castleberry, 863 F.3d at 264-66.  Ultimately, "[w]hether an environment is hostile requires looking at the totality of the circumstances, including: 'the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'"  Castleberry, 863 F.3d at 264 (quoting Harris, 510 U.S. at 23).  "These standards for judging hostility are sufficiently demanding to ensure that Title VII does not become a 'general civility code.'"  Faragher v. City of Boca Raton, 524 U.S. 775, 788 (1998) (quoting Oncale v. Sundowner Offshore Servs., Inc., 523 U.S. 75, 80 (1998)).

Plaintiff asserts that the Amended Complaint alleges racial and/or sexual discrimination that was severe or pervasive because it alleges that (1) her title was changed from "Assistant Controller" to "Bookkeeper," (2) her workload was increased with no corresponding increase in compensation; (3) she was required to train another employee regarding accounts receivable; (4) she was "berated" for raising an accounting discrepancy with the food and beverage manager, and (5) Ponziak called her "rude and disrespectful" in an email to the accounting department.  (Am.

Compl. ¶¶ 23, 25-26, 27, 30, 31-32; Pl.'s Mem. at 8.)  She maintains that these incidents demonstrate "a pattern of singling out and scapegoating" her. (Pl.'s Mem. at 9.)

However, as explained above, there are no allegations in the Amended Complaint that support an inference that the changes to her title or workload, or her lackluster pay raise, were motivated by animus based on either race or sex. The same is true for the single occasion when Plaintiff was "berated" for a work-related matter, because there is nothing about that incident that raises a reasonable inference that the work criticism, even if undeserved, was motivated by animus as to Plaintiff's protected status. Thus, none of those allegations support an inference of a hostile work environment based on either race or sex.

The last incident on which Plaintiff relies to support her allegation of a hostile work environment, and the only allegation in the Amended Complaint that even arguably reflects any discriminatory animus, is Poznick's statement in the February 11, 2024 email that Plaintiff was "rude and disrespectful." (1st Am. Compl. ¶ 32.) Plaintiff acknowledges that this criticism did not explicitly mention race or sex, but she maintains that it invokes a racial stereotype of an "angry black woman" and thus, supports inferences of racial and sexual animus and a correspondingly-discriminatory hostile work environment. (See Pl.'s Mem at 10.) "District courts in this circuit have recognized the 'perniciousness' of the 'angry Black woman' trope and have held the invocation of this stereotype may serve as evidence of discriminatory animus, even where the invocation is not explicit." Johnson v. Sch. Dist. of Philadelphia, Civ. A. No. 23-3430, 2024 WL 1773358, at *6 (E.D. Pa. Apr. 24, 2024) (quoting Curry v. Devereux Found., 541 F. Supp. 3d 555, 561 (E.D. Pa. 2021), and citing Blount v. TD Bank, N.A., Civ. A. No. 20-18805, 2023 WL 4621881, at *13 (D.N.J. July 19, 2023)).

11

Here, the allegation in the Amended Complaint is that Ponziak stated that Plaintiff was "rude and disrespectful" when dealing with other Club departments and then used that accusation to justify proposed behavior changes for both Plaintiff and her supervisor, who unlike Plaintiff, is not alleged to be black. (1st Am. Compl. ¶ 32.) Even accepting for purposes of the pending Motion that the "rude and disrespectful" comment in this context evokes an "Angry black woman" trope, the allegation of the single, isolated racial comment can only be characterized as a mere offensive utterance. It was neither physically threatening nor objectively humiliating and certainly was not so severe as to sustain a hostile work environment claim on its own. Accordingly, we conclude that the Amended Complaint does not sufficiently allege discrimination that is either severe or pervasive. We thus dismiss the hostile work environment claims pursuant to § 1981 and Title VII on that basis.[3]

### IV.   CONCLUSION

For the foregoing reasons, the Motion to Dismiss is granted in full. However, "in civil rights cases, [we] must offer amendment—irrespective of whether it is requested—when dismissing a case for failure to state a claim unless doing so would be inequitable or futile." Fletcher–Harlee Corp. v. Pote Concrete Contractors, Inc., 482 F.3d 247, 251 (3d Cir. 2007); see

---

[3] Plaintiff asserts in her Memorandum that she has also pled a claim for constructive discharge, arguing that the discrimination and hostile work environment that she endured was so intolerable that any reasonable person subject to them would resign. As an initial matter, although the Amended Complaint periodically mentions constructive discharge, it is not apparent that it actually includes a constructive discharge claim. Indeed, when Plaintiff argues constructive discharge is her Memorandum, she does not identify any particular Count of the First Amended Complaint as containing such a claim, and no cause of action actually references constructive discharge. Moreover, even assuming arguendo that such a claim was intended, the law is clear that "[t]o prove constructive discharge, the plaintiff must demonstrate a greater severity or pervasiveness of harassment than the minimum required to prove a hostile working environment." Spencer v. Wal–Mart Stores, Inc., 469 F.3d 311, 317 n.4 (3d Cir. 2006) (quotation omitted). Thus, where, as here, Plaintiff has failed to allege a plausible claim of either discrimination or hostile work environment, she has also failed to allege a cognizable claim of constructive discharge.

also Alston v. Parker, 363 F.3d 229, 235 (3d Cir. 2004).  We are not convinced that Plaintiff's claims are futile and do not perceive any inequity is permitting amendment.  We therefore dismiss the Amended Complaint without prejudice and afford Plaintiff a final opportunity to amend her complaint to state cognizable claims.  An appropriate Order follows.

                BY THE COURT:

                /s/ John R. Padova, J.
                _____
                John R. Padova, J.